J-S28026-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NORMAN MAYES | |
| Appellant | No. 2020 EDA 2013 |

Appeal from the Judgment of Sentence June 21, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007097-2010

BEFORE:  FORD ELLIOTT, P.J.E., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 30, 2014**

Norman Mayes appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following his convictions for aggravated assault and various weapons offenses.   After our review, we affirm based on the opinion authored by the Honorable Nina Wright Padilla.

The trial court set forth the relevant facts as follows:

On Mother's Day-Sunday May 9, 2010-at about 12:55 p.m., Kia Howell ("Howell") stood near 600 Green Street in the City and County of Philadelphia, discussing Mother's Day plans with her friends.  N.T. 4/12/13 at 49-50, 104-105; N.T. 4/15/13 at 8-9. Though there were about twelve women present, only Howell and her friends Tahira Alexander and Latisha Matthews leaned against Appellant's Cadillac automobile. N.T. 4/12/13 at 53, 57-58, 106-109; N.T. 4/15/13 at 8-9, 39-40.   Others present included Johnell Bell and Sukinah Dickerson.  N.T. 4/15/13 at 6,

_____

[*] Retired Senior Judge assigned to the Superior Court.

38, 41, 51.  None of the women had guns.  N.T. 4/12/13 at 22; 63.  Some people on the street did have cell phones.  N.T. 4/12/13 at 10, 64.  As the women conversed, Appellant approached them from behind, through an opening in a nearby fence, stopping about four feet from Howell.  N.T. 4/12/13 at 50, 109; N.T. 4/15/13 at 41-42.  Howell and her friends recognized Appellant as a resident of the neighborhood, who resides in apartment building "B."  N.T. 4/12/13 at 72; N.T. 4/15/13 at 45-56.  Appellant did "not care" for Howell.  N.T. 4/15/13 at 56.  Shryon Thomas, a.k.a. "Butter," pulled around the corner in her car and exclaimed, "the man's coming and he's got a gun!"  N.T. 4/12/13 at 52-53, 70; N.T. 4/15/13 at 18.  Appellant said angrily to Howell and her friends, "Bitches, get off my car."  N.T. 4/12/13 at 50; N.T. 4/15/13 a 42.  The women complied with Appellant's command and moved away from the car, but Appellant proceeded to argue with Howell; he went straight towards her, seemingly ignoring everyone else.  N.T. 4/15/13 at 43-44.  Howell told Appellant there was a better way he could phrase his request, to which Appellant responded, "You better get off my f------ car," before yelling, "Bitch, I'mma [sic] shoot you."  N.T. 4/15/13 at 11, 27,43.  Though some people on the street began to run, Howell did not. N.T. 4/15/13 at 44.  Howell said to Appellant either, "Damn, you gonna pull out a gun? You gonna shoot?" or "You got a gun for us?"  N.T. 4/13/13 at 50, 109.  Appellant, standing approximately two or three feet away from Howell, fired once, striking her in the chest. N.T. 4/12/13 at 50-51, 109; N.T. 4/15/13 at 44, 103. He walked away and got into his car but did not pull away immediately: it looked as though he was putting more bullets into his gun.  N.T. 4/12/13 at 109; N.T. 4/15/13 at 11, 44.  Finally Appellant fled in his vehicle as Johnell Bell chase him down the street, screaming for someone to call the police.  N.T. 4/15/13 at 46. . . At Hahnemann Hospital, Howell was taken straight into surgery as a level one trauma.  N.T. 4/12/13 at 27; N.T. 4/15/13 at 175.  She was in critical condition with gunshot wound to her right breast; she suffered a collapsed lung, and a fractured rib; the bullet had torn through her lung and diaphragm, lacerated her liver, and lodged between her eleventh and twelfth ribs.  N.T. 4/15/13 at 46-47, 175; N.T. 4/12/13 at 28; N.T. 4/15/13 at 175.

Trial Court Opinion, 10/23/2013, at 2, 4-6.

Appellant was arrested on May 9, 2010, and charged with Attempted Murder, Possession of a Firearm Prohibited, Aggravated Assault, Firearms Not to be Carried Without a License, Carrying Firearms in Public in Philadelphia, PIC, Terroristic Threats, Simple Assault, and Recklessly Endangering Another Person ("REAP"). . . . On April 17, 2013, a jury found Appellant not guilty of attempted murder and guilty of aggravated assault, firearms not to be carried without a license, carrying firearms in public in Philadelphia, and PIC. N.T. 4/17/13, at 25. Following a waiver trial after the jury's verdict, this court found Appellant in violation of 18 Pa.C.S. § 6105, persons not to possess firearms. N.T. 4/17/13, at 38.

***Id.***, at 1-2.

The court sentenced Mayes to 23½ to 47 years' imprisonment. Mayes filed post-sentence motions, which the court denied. This appeal followed. Mayes raises two issues for our review:

Were not the maximum consecutive sentences imposed which amount to a life sentence without parole excessive and unreasonable?

Were not the sentences imposed for the violations of the Uniform Firearms Act and possessing an instrument of crime, 13½ to 27 years total confinement, excessive and unreasonable in that each was a separate punishment for the same act of possession of a firearm?

After careful review of the parties' briefs, the record and the relevant law, we agree with Judge Padilla's analysis and affirm on the basis of her opinion. ***See*** Trial Court Opinion, 10/23/2013, at 15-25. We instruct the parties to attach a copy of Judge Padilla's decision in the event of further proceedings.

Judgment of sentence affirmed.

- 3 -

J-S28026-14

- 4 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/30/2014



FILED

OCT 2 3 2013

Criminal Appeals Unit
First Judicial District of PA

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :

    v.            :   CP-51-CR-0007097-2010

              :

 NORMAN MAYES       :   2020 EDA 2013

              :

## OPINION

Appellant, Norman Mayes, appeals from the June 21, 2013, judgment of sentence. Following a jury trial, Appellant was convicted and sentenced to ten (10) to twenty (20) years for Aggravated Assault,[1] five (5) to ten (10) years for possession of firearms prohibited,[2] three and a half (3½) to seven (7) years on a Violation of the Uniform Firearms Act ("VUFA") Firearms Not to be Carried Without a License,[3] two and a half (2½) to five (5) years for VUFA Carrying Firearms in a Public Street,[4] two and a half (2½) to five (5) years for Possessing an Instrument of Crime ("PIC"),[5] to run consecutively for a total of 23½ to 47 years.

This appeal followed.

## PROCEDURAL HISTORY

Appellant was arrested on May 9, 2010, and charged with Attempted Murder,[6] Possession of a Firearm Prohibited, Aggravated Assault, Firearms Not to be Carried Without a License, Carrying

---

[1] 18 Pa. C.S. § 2702
[2] 18 Pa. C.S. § 6105
[3] 18 Pa. C.S. § 6106
[4] 18 Pa. C.S. § 6108
[5] 18 Pa. C.S. § 907
[6] 18 Pa. C.S. § 901(A)

1

Exhibit "B"

Firearms in Public in Philadelphia, PIC, Terroristic Threats,[7] Simple Assault,[8] and Recklessly Endangering Another Person ("REAP").[9]

On April 9, 2013, Appellant filed a Motion in Limine, seeking to suppress evidence recovered from Appellant's home, including two additional firearms and ammunition.

On April 10, 2013, Appellant filed and argued a Motion for Dismissal Pursuant to Pa.R.Crim.P. Rule 600(G) that was denied and argued a Motion to Suppress that was heard and denied. Thereafter, this court granted-in-part Appellant's Motion in Limine to exclude evidence of additional firearms recovered from Appellant's residence. The matter then proceeded to trial by jury.

On April 17, 2013, a jury found Appellant not guilty of attempted murder and guilty of aggravated assault, firearms not to be carried without a license, carrying firearms in public in Philadelphia, and PIC. N. T. 4/17/13 at 25. Following a waiver trial after the jury's verdict, this court found Appellant in violation of 18 Pa. C.S. § 6105, persons not to possess firearms. N. T. 4/17/13 at 38.

Defendant's sentencing occurred on June 21, 2013. Upon consideration of defendant's presentence investigation report; the mental health report; the Commonwealth's sentencing memorandum; the arguments of counsel; the safety of the public; Appellant's likelihood for rehabilitation; Appellant's criminal history, specifically, his conviction and subsequent sentence of 10 years' incarceration for aggravated assault after shooting another man in the leg during an argument; and Appellant's allocution, this court sentenced Appellant on June 21, 2013. N. T. 6/21/13 at 1-17. This court sentenced Appellant to 10 to 20 years incarceration for the aggravated assault, 5 to 10 years for possession of firearms prohibited, 3 ½ to 7 years on firearms not to be carried without a license, 2 ½ to five years for carrying firearms in public, 2 ½ to 5 years for PIC, to run consecutively for a total of 23½ to 47 years. N. T. 6/21/13 at 18-19.

---

[7] 18 Pa. C.S. § 2706(A)(1)
[8] 18 Pa. C.S. § 2701(A)
[9] 18 Pa. C.S. § 2705.

2

On June 24, 2013, Appellant filed a timely Post Sentence Motion for Arrest of Judgment, Judgment of Acquittal, New Trial, and/or Modification of Sentence, alleging that the evidence was insufficient and of inadequate weight to prove the elements of Aggravated Assault and PIC, and that this court's sentence was manifestly unreasonable and excessive. *See,* App. Post Sentence Motion. Appellant's motion was denied on July 11, 2013.

On July 15, 2013, Appellant filed a Notice of Appeal to the Superior Court.

On September 5, 2013, this Court filed its Order Pursuant to Pa. R.A.P. 1925(b) directing Appellant to file a Concise Statement of Matters Complained of on Appeal within twenty-one (21) days.

On September 16, 2013, Appellant filed a Preliminary Concise Statement of Matters Complained of on Appeal, alleging that his sentence was excessive, that the evidence was insufficient to sustain his convictions for Aggravated Assault and PIC, that the Commonwealth failed to disprove beyond a reasonable doubt Appellant's defense of self defense, and that this Court erred in denying Appellant's motions for a mistrial made in response to prejudicial comments by the Assistant District Attorney during closing arguments.

On that same date, Appellant filed a Motion for Extension of Time, requesting an additional twenty-one (21) days to perfect his Statement. This Court granted said Motion on September 18, 2013.

On October 16, 2013, Appellant filed a Supplemental Statement of Errors Complained of On Appeal, alleging that this court erred by denying his Motion to Dismiss under Rule 600, his Motion to Suppress physical evidence seized from Appellant's home, that the sentences imposed for VUFA and PIC were excessive in that "each was a separate punishment for the same act of possession of a firearm," and that his sentence was excessive in that it amounted to a life sentence.

## FACTS

3

This case proceeded to trial on April 12, 2013. Police Officers Mario De Luca, Frank Bonilla, and Norman DeFields, Detectives Thomas DeMalto, Francis McClain, and James Seymour, complainant Kia Howell, and witnesses Latisha Matthews, Sukinah Dickerson, and Johnell Bell testified for the Commonwealth. The facts established at trial were undisputed and evinced the following.

On Mothers' Day—Sunday May 9, 2010—at about 12:55 p.m., Kia Howell ("Howell") stood near 600 Green Street in the City and County of Philadelphia, discussing Mother's Day plans with her friends. N. T. 4/12/13 at 49-50, 104-105; N. T. 4/15/13 at 8-9. Though there were about twelve women present, only Howell and her friends Tahira Alexander and Latisha Matthews leaned against Appellant's Cadillac automobile. N. T. 4/12/13 at 53, 57-58, 106-109; N. T. 4/15/13 at 8-9, 39-40. Others present included Johnell Bell and Sukinah Dickerson. N. T. 4/15/13 at 6, 38, 41, 51. None of the women had guns. N. T. 4/12/13 at 22; 63. Some people on the street did have cell phones. N. T. 4/12/13 at 10, 64.

As the women conversed, Appellant approached them from behind, through an opening in a nearby fence, stopping about four feet from Howell. N. T. 4/12/13 at 50, 109; N. T. 4/15/13 at 41-42. Howell and her friends recognized Appellant as a resident of the neighborhood, who resides in apartment building "B." N. T. 4/12/13 at 72; N. T. 4/15/13 at 45-46. Appellant did "not care" for Howell. N. T. 4/15/13 at 56. Shyron Thomas, a.k.a. "Butter," pulled around the corner in her car and exclaimed, "The man's coming and he's got a gun!" N. T. 4/12/13 at 52-53, 70; N. T. 4/15/13 at 18.

Appellant said angrily to Howell and her friends, "Bitches, get off my car." N. T. 4/12/13 at 50; N. T. 4/15/13 at 42. The women complied with Appellant's command and moved away from the car, but Appellant proceeded to argue with Howell; he went straight towards her, seemingly ignoring everyone else. N. T. 4/15/13 at 43-44. Howell told Appellant there was a better way he could phrase his request, to which Appellant responded, "You better get off my fucking car," before yelling, "Bitch,

4

I'mma [sic] shoot you." N. T. 4/15/13 at 11, 27, 43. Though some people on the street began to run, Howell did not. N. T. 4/15/13 at 44.

Howell said to Appellant either, "Damn, you gonna pull out a gun? You gonna shoot?" or "You got a gun for us?" N. T. 4/12/13 at 50, 109. Appellant, standing approximately two or three feet away from Howell, fired once, striking her in the chest. N. T. 4/12/13 at 50-51, 109; N. T. 4/15/13 at 44, 103.[10] He walked away and got into his car but did not pull away immediately: it looked as though he was putting more bullets into his gun. N. T. 4/12/13 at 109; N. T. 4/15/13 at 11, 44. Finally Appellant fled in his vehicle as Johnell Bell chased him down the street, screaming for someone to call the police. N. T. 4/15/13 at 46.

At first no one realized Howell had been shot: although the gunshot was audible, she was still standing. N. T. 4/12/13 at 59. But then Howell gasped, "Yo, this motherfucker shot me" and grabbed her chest, buckling to the ground. N. T. 4/12/13 at 59; N. T. 4/15/13 at 44-45. Smoke rose from the hole in her leather jacket. N. T. 4/15/13 at 46-47, 175. Her friends, screaming and panicking, called 911 and attempted to get her into a car but could not; at this time, there was also a large amount of blood "everywhere." N. T. 4/12/13 at 59, 111; N. T. 4/15/13 at 46-48.

Police responded to the crime scene. N. T. 4/12/13 at 11-12; N. T. 4/15/13 at 65-66. Officer Mario De Luca observed a large crowd surrounding Howell, who lay on the ground with blood on her shirt and a white towel pressed to a hole in her chest. N. T. 4/12/13 at 12-16. Howell appeared to be slipping in and out of consciousness and was unresponsive when Officer De Luca asked if she was okay. N. T. 4/12/13 at 16, 26-27. Several members of the crowd helped him lift Howell into the back of his police car; he was afraid if he waited for the ambulance, she would die. N. T. 4/12/13 at 16, 27; N. T. 4/15/13 at 13, 46-48. One (1) .380 caliber fired cartridge casing was later recovered from the scene. N. T. 4/15/13 at 89.

---

[10] On May 10, 2010, Appellant did not have a license to carry a firearm. N. T. 4/15/13 at 176.

5

On the ride to the hospital Howell experienced intense pain in her chest, back, and side, and thought she was going to die. N. T. 4/12/13 at 111-112. Howell's mother, in the back seat with her, begged Howell to hold on and told her that she would be okay. N. T. 4/12/13 at 112. Howell told Officer De Luca she had been shot in the chest and that she had been leaning on Appellant's car before he told her he was going to shoot her. N. T. 4/12/13 at 17. She then stated that Appellant shot her and got into a silver Cadillac before fleeing the scene. N. T. 4/12/13 at 17. She also told Officer De Luca that Appellant lived in the neighborhood, while Howell's mother supplied Appellant's name and more details about his car. N. T. 4/12/13 at 17. Officer De Luca put this information out over the radio. N. T. 4/12/13 at 17.

At Hahnemann Hospital, Howell was taken straight into surgery as a level one trauma. N. T. 4/12/13 at 27; N. T. 4/15/13 at 175. She was in critical condition with a gunshot wound to her right breast; she suffered a collapsed lung, and a fractured rib; the bullet had torn through her lung and diaphragm, lacerated her liver, and lodged between her eleventh and twelfth ribs. N. T. 4/15/13 at 46-47, 175 N. T. 4/12/13 at 28; N. T. 4/15/13 at 175.[11] Police interviewed her after her surgery, and Howell told detectives that she was standing outside when the man who owned the car she was leaning on came over and said, "I'm tired of this shit, get the fuck off my car," before pulling out a gun and shooting her. N. T. 4/15/13 at 103. She also told detectives she had had problems with Appellant before. N. T. 4/15/13 at 113. She identified Appellant in a photo array. N. T. 4/15/13 at 104.

Police Officer Frank Bonilla was driving to the scene at 600 Green Street when he observed a silver Cadillac traveling at a high speed westbound on Spring Garden Street. N. T. 4/15/13 at 64. After detouring to the shooting scene, he received information that the suspect had escaped in a silver or gray Cadillac. N. T. 4/15/13 at 65-66. He activated his lights and sirens and drove westbound on Spring Garden. N. T. 4/15/13 at 66. Three (3) to five (5) minutes later, Officer Bonilla spotted a silver Cadillac

---

[11] Ultimately, Howell was in the hospital for six days and was discharged May 14, 2010. N. T. 4/12/13 at 112-114; N. T. 4/15/13 at 175.

6

turning onto Ridge Avenue and swerved around traffic to catch up with the car at 15th and Ridge. N. T. 4/15/13 at 66-67. Despite the fact that Officer Bonilla followed Appellant with lights and sirens activated, hitting the sirens and horn multiple times, Appellant did not pull over. N. T. 4/15/13 at 66-67. It took about five (5) to ten (10) minutes and the equivalent of eight (8) or nine (9) city blocks before Appellant stopped. N. T. 4/15/16 at 68.

With his gun drawn, Officer Bonilla ordered Appellant out of the car at least ten (10) times, but Appellant did not comply. N.T. 4/15/13 at 69-70. As Officer Bonilla approached Appellant's car, he observed Appellant moving around in the front seat. N. T. 4/15/13 at 71. Finally, Appellant exited the vehicle with his hands up and Officer Bonilla ordered him to get on the ground. N. T. 4/15/13 at 71. As Appellant did so, he said, "The gun's in the car, the gun's in the car." N. T. 4/15/13 at 71. Officer Bonilla handcuffed Appellant and performed a pat down search. N. T. 4/15/13 at 71-72.

Detectives photographed Appellant's car, a 1985 Cadillac Fleetwood sedan, and recovered a black handgun from the driver's side floor, a brown holster from Appellant's waist, and a magazine containing eighteen (18) live rounds from Appellant's pants pocket. N. T. 4/15/13 at 72, 74, 94-95. The gun, a Taurus .380,[12] was operable and had a capacity of nineteen (19) bullets; eighteen (18) in the magazine and one in the chamber. N. T. 4/15/13 at 128, 130. The two magazines, each with nineteen (19) rounds for a total of thirty-eight (38) rounds, held Remington hollow point bullets. N. T. 4/15/13 at 130-131, 136. The fired cartridge casing recovered at the scene was fired from the Taurus .380. N. T. 4/15/13 at 136.

Witnesses identified Appellant and went to Central Detectives to give statements. N. T. 4/12/13 at 60; N. T. 4/15/13 at 13, 48-49, 75.

Around 1:19 p. m. that same day, police received a radio call that three black men were attempting to break into Appellant's residence at 620 Marshall Street, apartment B-11. N. T. 4/15/13 at

---

[12] Serial number KKANEP69762. N. T. 4/15/13 at 128-130.

7

153. By the time police arrived, the front door had been forced open and the apartment was in disarray, but no one was inside. N. T. 4/15/13 at 154-155. At that time, police executed a search warrant at Appellant's home. N. T. 4/15/13 at 148. Four (4) boxes of bullets were recovered from a steam trunk in a locked closet next to Appellant's bedroom. N. T. 4/15/13 at 148-149. Each box had twenty-five (25) bullets, with one (1) box missing. N. T. 4/15/13 at 149. Detectives also recovered proof of residence in the form of a voter registration card. N. T. 4/15/13 at 149.

At trial, Howell, Matthews, Bell, and Dickerson identified Appellant as the shooter. N. T. 4/12/13 at 51, 107; N. T. 4/15/13 at 6-7, 40.

As for Howell, the bullet remains lodged in her body; doctors could not remove it. N. T. 4/12/13 at 114-115. She experiences sharp pains in her back and side at night, if she goes up the steps too quickly, or performs other strenuous activities. N. T. 4/12/13 at 115. After the shooting Howell did not go outside for a month because she was so frightened; she has to walk past the site where she was shot every day and the knowledge that she could have died affects her strongly. N. T. 4/12/13 at 116.

In Appellant's defense, Thomas Christy testified that on April 3, 2013, he attempted to serve subpoenas in the area of 600 Marshall Court and 500 Windell Court on Nicole Smalls, Tahira Alexander, Youlanda Jackson, Kia Howell, Latisha Matthews, Veronica Spencer, Sukinah Dickerson, and Johnell Bell. N. T. 4/16/13 at 27-28. He did not speak to any of the women subpoenaed, but did mail additional copies of the subpoenas to their listed addresses. N. T. 4/16/13 at 28. Nicole Smalls, Youlanda Jackson, and Veronica Spencer did not testify at trial. N. T. 4/16/13 at 28.

8

# DISCUSSION

## I.    Sufficiency

Appellant argues that the evidence was insufficient to sustain his convictions for aggravated assault and PIC.[13]

The standard applied to sufficiency of the evidence, generally, is as follows:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part, or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. McClendon*, 2004 PA Super 164, 874 A.2d 1223, 1228 (Pa. Super. Ct. 2005).

### a.    *Aggravated Assault*[14]

Appellant argues that the evidence was insufficient to sustain his conviction for Aggravated Assault, defined under the statute as a person who "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). *Commonwealth v. Fortune*, 2013 PA Super 134, 68 A.3d 980 (Pa. Super. Ct. 2013). Malice is a crucial element of aggravated assault, and is established when there is a "wickedness of disposition, hardness of heart, cruelty, recklessness

---

[13] He concedes, however, that the evidence was sufficient to prove him guilty of all VUFA violations. *See* Defendant's Post Sentence Motion, ¶ 12; Statement of Matters Complained of on Appeal.

[14] In Appellant's Preliminary Concise Statement, he also alleges that the Commonwealth failed to prove beyond a reasonable doubt that Appellant intended to cause serious bodily injury to Ms. Howell. This issue is addressed within the discussion of the sufficiency of Aggravated Assault. Similarly, the issue of self defense will be discussed herein.

of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *McClendon*, 874 A.2d at 1229.

Serious bodily injury is injury that creates "a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* For aggravated assault purposes, an "attempt" is found where an "accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." *Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa.Super.2005), *appeal denied*, 583 Pa. 694, 879 A.2d 781 (2005). Intent must ordinarily be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances. *Fortune*, 68 A.3d at 980. A totality of the circumstances test is to be used to evaluate whether the defendant acted with the necessary intent. *Id.*

Appellant argues that he acted in self-defense and thus the Commonwealth could not prove that he possessed the intent necessary to fulfill the statutory requirements of Aggravated Assault. Where an Appellant relies upon the defense of self-defense, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable. *Commonwealth v. Yanoff*, 456 Pa.Super. 222, 690 A.2d 260 (1997). The Commonwealth sustains this burden if "it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." *McClendon*, 874 A.2d at 1230. It remains the province of the jury to determine whether Appellant's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat. *Id.*

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the evidence introduced at trial established that Appellant did not have a reasonable belief that he was in danger of death or serious bodily injury. Several witnesses testified that no one in the group of

women near Appellant's car had guns. N. T. 4/12/13 at 63, 110. Appellant claims he felt threatened by the women, and mistook Johnell Bell's phone for a gun. This claim is patently unreasonable. Kia Howell testified that no one had a phone out when Appellant shot her. N. T. 4/12/13 at 110. Given the circumstances and the relative sizes and disparate shapes of a gun and a cell phone, it is difficult to see how Appellant's belief that his life was in danger was a reasonable one. Even if this court were to believe his arguments, the fact remains that even if he felt threatened by the "gun," Appellant did not fire at Johnell Bell but at Kia Howell, who testified that she did not have a cell phone in hand at the time of the shooting. N. T. 4/12/13 at 110. Furthermore, Bell testified that Appellant said nothing to anyone else on the street, but went "straight to Kia." N. T. 4/15/13 at 44.

Furthermore, Kia Howell was seriously wounded when Appellant shot her in the chest; had it not been for the quick thinking and actions of Officer De Luca, Howell likely would have died at the scene. N. T. 4/12/13 at 26-27. She suffered a gunshot wound to her right breast along with a collapsed lung and fractured rib; the bullet ripped through her lung, diaphragm, and lacerated her liver, lodging in her ribs. N. T. 4/12/13 at 28; 4/15/13 at 175. Even after extensive surgeries and a lengthy stay in the hospital, the bullet fired from Appellant's gun remains lodged in her body, causing her pain at night and when she performs strenuous activities. N. T. 4/12/13 at 114-115. Shooting someone in the chest, which is a vital part of the body, can establish intent to cause serious bodily harm. *Commonwealth v. Speulveda*, 579 Pa. 217, 226-227, 855 A.2d 783, 788-89 (2004).

Therefore, the jury as a factfinder was not in error to find that Appellant's belief was unreasonable and he possessed the requisite intent as required by the statute. The Commonwealth proved this charge beyond a reasonable doubt.

11

### b.  PIC[15]

Appellant next argues that the evidence was insufficient to convict him of PIC. A defendant is guilty of Possessing Instruments of Crime, a misdemeanor of the first degree, "where he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a). *Commonwealth v. Lopez*, 2012 PA Super 161, 57 A.3d 74, 79-80 (Pa. Super. Ct. 2012) *appeal denied*, 62 A.3d 379 (Pa. 2013). A conviction for possession of an instrument of crime requires the Commonwealth to prove that a defendant possessed an instrument commonly used for criminal purposes, under circumstances not manifestly appropriate for lawful use, with the intent to employ it criminally. *Commonwealth v. Foster*, 438 Pa. Super. 40, 44, 651 A.2d 163, 165 (1994) (where evidence was insufficient to show intent to possess an instrument criminally *where Appellant acted in self-defense*).

As discussed above, Appellant's claim of self-defense fails because his belief that he was in danger was not reasonable and the jury did not believe his justification of self-defense. *See Foster*, 651 A.2d at 165. Furthermore, due to his prior felony conviction for aggravated assault, he was ineligible to possess a firearm and therefore any intent to possess it was criminal. N. T. 4/17/13 at 32.[16] With the intent to cause serious bodily harm, Appellant fired one shot, striking Kia Howell in the chest and gravely wounding her – the bullet remains in Howell's body and causes her pain to this day. N. T. 4/12/13 at 107, 115. The gun was recovered from the floor of Appellant's car, and additional ammunition from Appellant's person. N. T. 4/15/13 at 94, 98.

Thus, Appellant possessed this firearm and had the requisite intent to employ it in a criminal action, and is not entitled to relief on this claim.

---

[15] In Appellant's Preliminary Concise Statement, he also alleges that the Commonwealth failed to prove beyond a reasonable doubt that Appellant possessed a gun with intent to use it criminally. This issue is addressed within the discussion of the sufficiency of PIC.

[16] CP-51-CR-0521001-1983, an archived case for which the docket is not retrievable on this court's Case Management System.

12

## II.     Mistrial

With regard to mistrial generally, the trial court may, at its discretion, grant a mistrial whenever the prejudicial event may "reasonably be said to deprive the defendant of a fair and impartial trial ... the court must determine whether the misconduct or prejudicial error actually occurred and if so ... assess the degree of any resulting prejudice." *Commonwealth v. Judy*, 2009 PA Super 148, 978 A.2d 1015, 1019 (Pa. Super. Ct. 2009) (internal citations omitted). On review, an appellate court is constrained to an abuse of discretion standard. *Id.* With regard to a claim of prosecutorial misconduct in a closing statement, it is well settled that, in reviewing the prosecutor's remarks to determine their prejudicial quality, "comments cannot be viewed in isolation but must be considered in the context in which they were made." *Id.* A court must consider whether a defendant received a fair trial, not a perfect one. *Id.*

"Not every unwise remark made by an attorney amounts to misconduct or warrants the grant of a new trial." *Commonwealth v. Carson*, 590 Pa. 501, 913 A.2d 220, 242 (Pa. 2006). Furthermore, it is well-settled that a prosecutor has "considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." *Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa.Super.2008) (internal citations and quotations omitted). Prosecutorial misconduct does not rise to the level of the grant of a mistrial *unless* the unavoidable effect of the remarks was to prejudice the jurors "by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict." *Id.* Such claims are evaluated under the harmless error standard. *Id.*

The reviewing court will "review the allegedly improper remarks in the context of the closing argument as a whole." *Commonwealth v. Sneed*, 45 A.3d 1096, 1110 (Pa. 2012) (citing *Commonwealth v. LaCava*, 666 A.2d 221, 235 (Pa. 1995)). Prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom, or were only oratorical flair. *Commonwealth v. Chmiel*, 585 Pa. 547, 619, 889 A.2d 501, 544 (2005). A mistrial is granted only

13

under absolute necessity, when the incident is of such gravity that its unavoidable effect is to deprive appellant of a fair trial. *Commonwealth v. Johnson*, 572 Pa. 283, 815 A.2d 563, 576 (Pa. 2002) (citations omitted). Furthermore, instructions by the court may cure any improper prejudice caused by the prosecutions' remarks. *Commonwealth v. Robinson*, 581 Pa. 154, 253, 864 A.2d 460, 519 (2004).

Here, Appellant complains of a number of allegedly prejudicial remarks made by the Assistant District Attorney. In the first remark during her closing, the Assistant District Attorney said:

> "You know, any time you hear something about a child being victimized, you want to say to yourself, who would do that? Who would hurt a child? And yet, it happens. And you think to yourself, who would put a bomb at the Boston Marathon to injure innocent people . . . But it happens. This is the world that we live in. We cannot always understand why people do what they do, 'cause it's unreasonable, but it happens. That's what happened in this case." N. T. 4/16/13 at 79-80.[17]

N. T. 4/16/13 at 79-80. Counsel objected, and the objection was sustained. During the charge to the jury, this Court again instructed jurors that arguments of counsel are not to be considered as evidence. N. T. 4/16/13 at 115. The Court further instructed:

> "During her closing argument you may have heard the prosecutor mention a child being victimized and the tragedy at the Boston Marathon yesterday. You should not consider any sympathy you may have for a child victim, nor should you consider the tragedy at the Boston Marathon in your deliberations. Neither is relevant or appropriate for your considerations here."

N. T. 4/16/13 at 117. Next, the Assistant District Attorney said:

> "My friend, her name is also Allison. She was my roommate in college. She's a teacher here in Philadelphia. She had jury duty last year, and she missed school for about a week. And all the kids in the fourth grade class wanted to know where were you, what did you do? She asked me, what should I tell them? Tell them you were on a trial, that any time someone's accused of doing something wrong they have a right to a trial and they have a right to an attorney. And then it's the jury's duty to come up with the truth, to come up with what really happened. And she told them all of that and they asked questions and questions about what her case was and why they did what they did. And I thought to myself, wow, if she had heard these facts and the jury said, yeah, the defendant's not guilty, he was justified in his actions, can you imagine the look on those fourth graders' faces? Oh, if I get angry I can resort to violence? Is that what we want to teach our children?"

---

[17] This trial occurred and was in progress during the day of the Boston Marathon bombing on April 15, 2013. The Assistant District Attorney's closing remarks were given the following day.

N. T. 4/16/13 at 93-94. Counsel objected, and the objection was sustained. During the closing charge, in addition to the general instruction that the jurors should not consider counsel's arguments as evidence, this Court specifically instructed in its final charge:

> "You may have heard the prosecution during closing arguments say things relating to future consequences of your decision with respect to teaching our children. Your verdict in this case has no bearing on teaching children anything. Please disregard any such words or the substance of these words. Future consequences are to have no part in your decision-making."

N. T. 4/16/13 at 116-117. In both instances, despite the improper nature of the Assistant District Attorney's remarks, the curative instructions were clear and sufficient to prevent any prejudice from occurring. *Robinson*, 581 Pa. at 253.

Appellant also made another objection, which was overruled. The Assistant District Attorney stated:

> "So [counsel] says, well, this is self-defense. Was it? Before you say it was, okay for the defendant to take away her inalienable right, we have to look at several things. You have to make sure there was no other alternative. It's your life or his; that's what it has to be."

N. T. 4/16/13 at 86. There was nothing improper about this remark, which was intended to explain to jurors the standard for self-defense. It was not inflammatory or prejudicial, and was within the boundaries of acceptable oratorical flair. Therefore, Appellant is not entitled to relief on these claims.


### III.  Sentence

Appellant alleges that this court's sentence violated the precepts of the Pennsylvania Sentencing Code and was "manifestly unreasonable and excessive" and that they "amounted to a life sentence." Statement of Errors at ¶2f; Supplemental Statement of Errors at ¶4. Appellant also argues that the sentences for VUFA and PIC were a "separate punishment for the same act of possession of a firearm."

As noted above, Appellant was sentenced to a total period of incarceration of twenty three and a half (23½) to forty seven (47) years.[18]

It is well-settled that with regard to the discretionary aspects of sentencing, there is no automatic right to appeal. *Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010) (citation omitted). On appeal, the four factors that must be determined before considering an appeal on the discretionary aspects are: whether the appeal is timely; whether Appellant preserved his issue; whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence; and whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. *Commonwealth v. Malovich*, 903 A.2d 1247, 1250 (Pa. Super. 2006). A substantial question exists only when Appellant advances an argument that the sentencing judge's actions were inconsistent with a specific provision of the Sentencing Code; or contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Griffin*, 65 A.2d 932, --- (Pa. Super. 2013). The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825 (Pa. Super. 2007).

A sentence may be found unreasonable after reviewing the four (4) provisions of 42 Pa. C.S. § 9781(d) or if the appellate court finds the sentence was imposed without express or implicit consideration by the sentencing court of the general standards in 42 Pa. C.S. § 9721(b), i.e. protection of the public, the gravity of the offense in relation to the impact on the victim and the community, and the rehabilitative needs of the defendant. *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957, 569 (2007).

---

[18] Applying the Sixth Edition Revised of the Sentencing Guidelines, the parties agreed that defendant's prior record score was a five (5). N. T. 6/21/13 at 8. Using the Deadly Weapon/Used Matrix, the charge of aggravated assault was assigned a standard range of 90 to 108 months, plus or minus 12 months for the aggravated and mitigated ranges, respectively. N. T. 6/21/13 at 9.

Pennsylvania law allows the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed; a challenge to this discretion does *not ordinarily* raise a substantial question. *Commonwealth v. Prisk,* 13 A.3d 526, 533 (Pa. Super. 2011) (emphasis added). The imposition of consecutive sentences raises a substantial question in only the most extreme circumstances where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment. *Commonwealth v. Lamonda,* 52 A.3d 365, 372 (Pa. Super. 2012). The court should consider whether the decision to sentence consecutively raises the aggregate sentence to what appears to be on its face an excessive level in light of the criminal conduct at issue. *Prisk,* 13 A.3d at 533 (quotations and internal citations omitted).

Appellant would argue that this case raises a substantial question. However, it does not. Appellant cites *Commonwealth v. Coulverson,* 2011 PA Super 255, 34 A.3d 135 (Pa. Super. 2011), where the court vacated a sentence where the maximum aggregate sentence potentially consigned Coulverson to life in prison, that case is distinguishable from the instant circumstances. There, the court's sentence for a nineteen year old defendant did not take into account Coulverson's life, cooperation and remorse, attempts at reclaiming a productive role in society, or the possibility that he might be rehabilitated. *Id.* at 150.

However, considering the circumstances of this case, including Appellant's age and prior conviction, the facts and holdings of *Commonwealth v. Austin,* 2013 Pa. Super. 114 (Pa. Super. 2013) and *Commonwealth v. Edwards,* 2013 Pa. Super. 142, p. 7 (Pa. Super. 2013) are more properly applicable here. The *Austin* court found that an aggregate sentence of 25 – 70 years for 96 separate offenses was not excessive and did not raise a substantial question where the court was amply informed by a prior Superior Court Opinion, presentence investigation reports, expert's reports, sentencing guidelines, and Appellant's in court sentencing statement. *Austin,* 2013 Pa. Super. 114.

17

Even if the court were to reach the merit of the issue (which it did not, as Austin's argument could not raise a substantial question), the trial court did not abuse its discretion. *Id.*

*Edwards* heavily cites *Austin* and distinguishes *Coulverson*. The court reasoned that the sentencing court's application of the Sentencing Guidelines was not at issue. *Edwards*, p. 7. It noted that the *Coulverson* court was concerned that the trial court's discussion in support of its sentence had been minimal in that it "did not expound on specific sentencing factors but instead premised the sentence imposed on testimony adduced primarily from the rape victim, her family, and her friends." *Edwards*, at p. 7, quoting *Coulverson*. The court was further troubled by the sentencing court's "cursory treatment" of "so weighty a matter, as the 90-year aggregate maximum potentially consigns a 19-year-old defendant with mental health problems to life in prison without even a nod to relevant sentencing factors." *Id.* The *Edwards* court had the benefit of behavioral reports and expert testimony regarding Appellant's likelihood to reoffend, was a high risk offender, had psychological issues, functioned on the level of an adolescent, behaved in a resistant pattern of sexual deviation, would not be easy to rehabilitate, and showed a lack of remorse. *Edwards*, p. 8. The trial court also took into account appellant's history to support the notion that he was likely to re-offend. *Id.* The trial court noted it would be "absurdly irresponsible" to fail to consider the totality of the offender. *Id.*

This court did sentence Appellant to the maximum possible term of confinement; however, this sentence was within the guidelines and was based upon numerous reports including a mental health evaluation and the PSI, the evidence introduced at trial, Appellant's demeanor at sentencing and general lack of remorse, his poor likelihood for rehabilitation, future danger to society, and his criminal history.

At trial, the evidence introduced showed that on Mother's Day, 2010, on a crowded street and in broad daylight, Appellant shot Kia Howell in the chest because she was leaning against his car. N. T. 4/15/13 at 9-11. He then fled by vehicle and though he was pursued by a marked police car with lights

18

and sirens blaring, did not stop for five to ten minutes, or the equivalent of nine city blocks. N. T. 4/15/13 at 68. Additionally, when Officer Bonilla asked Appellant to get out of his car, it took Appellant five minutes to comply, with the officer concerned for his own safety. N. T. 4/15/13 at 69. Officer DeLuca, first on the scene at the shooting, felt it necessary to drive Howell to the hospital himself rather than waiting the few extra minutes for an ambulance to arrive, afraid that if he tarried any longer Howell would die. N. T. 4/12/13 at 26-27. Howell herself testified to the severe pain and terror she suffered after being shot as well as during and after her recovery. N. T. 4/12/13 at 110-11, 115-116. The crime was severe; but for Officer DeLuca's quick actions, Howell would most likely have bled out on that street. N. T. 4/12/13 at 26-27. Furthermore, though Appellant asserts that he cooperated with police, the facts paint a different picture. He fled the scene of the crime, and remained immediately non-compliant when Officer Bonilla ordered him out of the car. N. T. 4/15/13 at 68.

Additionally, while considering Appellant's sentence, this court had the opportunity to review the presentence investigation report and mental health evaluations.[19] Appellant is not close with his family: he is divorced, does not see his children, and has never met his grandchildren. *See* PSI, p. 1. He has a tenth grade education and purportedly attended business classes online through Ashford University in Georgia. *See*, PSI, p. 2.[20] Appellant has a history of alcohol abuse. *See*, PSI, p. 3. He reported no leisure activities or hobbies. *See*, PSI, p. 3. Appellant's brother states that he does not see Appellant often because Appellant mostly keeps to himself, and that Appellant is particular about his belongings. *See*, PSI, p. 4. Appellant has eight prior arrests. *See*, PSI, p. 4. Most troubling, however, beginning in 1984 Appellant spent nine years in prison for shooting a man in the legs during a dispute.

---

[19] The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the pre-sentencing report; thus properly considering and weighing all relevant factors. *Commonwealth* v. Boyer, 2004 PA Super 303, 856 A.2d 149, 154 (Pa. Super. Ct. 2004) aff'd, 586 Pa. 142, 891 A.2d 1265 (2006)

[20] Per the Pre-Sentence Investigation Report, the Ashford admissions office had no record of Appellant under either of his aliases, Norman Mayes and Neoma Mayes.

19

*See*, PSI p. 4; Mental Health Evaluation, p. 2. All of these facts taken together form a disturbing picture of a man likely to respond with violence, as he has a history of doing so.

Although Appellant claims that he has shown remorse, he has not. Despite a prior conviction in a gun-related incident that prevents him from legally purchasing firearms, he illegally obtained the gun used in this case as well as a staggering amount of ammunition, in violation of the law despite his present admission of the VUFA charges. More disturbingly, during his allocution, Appellant did not appear to comprehend the seriousness of the charges against him. Addressing this court, he read from a piece of paper, and described the shooting as:

> . . . a very emotional and tense situation that these young ladies put themselves in that could have been avoided if only they had conducted themselves more maturely. I'm sorry about the whole incident ever having to occur. Especially the situation pertaining to Ms. Kia Howell being injured. It was very unfortunate but necessary in order for me to sustain my well-being under the circumstances . . . I sincerely hope in the future that these people learn to respect themselves more and other people, people's property also. We won't forget but hopefully we can forgive . . .

N. T. 6/21/13 at 15-16. It is clear from Appellant's allocution that he has not accepted responsibility and does not, in fact, feel any remorse. He used his opportunity for allocution to essentially blame the victim for being shot. Considering his lack of remorse, his prior history of shooting a man during a dispute, and his issues including alcohol abuse and lack of family or friends in his support network, and he fact that he previously shot a man during an argument, it is highly likely that Appellant would re-offend if released. This court particularly took note of the fact that Appellant was 63 years old and still did not understand what he had done wrong, both in his 1984 case and in this case, and that he was a danger to society. N. T. 6/21/13 at 17. This court further noted on the record that Appellant was beyond hope of rehabilitation. N. T. 6/21/13 at 17.

Appellant further argues that the sentences imposed for VUFA and PIC were excessive and unreasonable as "each was a separate punishment for the same act of possessing a firearm." This argument is disingenuous at best as VUFA and PIC are separate crimes. As discussed above, a defendant is guilty of PIC where he "possesses any instrument of crime with intent to employ it

20

criminally." 18 Pa.C.S.A. § 907(a). The offense is not firearm specific and focuses on criminal *intent*, which Appellant possessed. An instrument of crime might be a firearm, a knife, a tire iron, or even a sharpened metal ruler.[21]

By contrast, the statutory offenses under the Uniform Firearms Act focus on *possession of firearms* specifically, and intent is not at issue: 18 Pa.C.S.A. § 6105, "a person who has been convicted of an offense enumerated in subsection (b) ... shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S.A. § 6106 states, "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." And finally, 18 Pa.C.S.A. § 6108 states that "no person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless such person is licensed to carry a firearm ... [or] exempt from licensing..."

None of the Uniform Firearm Act statutes are concerned with intent, only the violation and possession. In a bifurcated trial on April 17, 2013, a jury found Appellant guilty of 18 Pa.C.S.A. § 6106 and § 6108, and this court found Appellant guilty of 18 Pa.C.S.A. § 6105. On the date of the incident, Appellant did not have a license to carry a firearm. N. T. 4/15/13 at 176. Furthermore, Appellant was prohibited from possessing a firearm due to a prior conviction. N. T. 4/17/13 at 32. Though both offenses involved firearms, the focus of each charge was quite different.

Finally, Appellant argues that his sentence was excessive because, due to his age, it amounts to a life sentence. This claim has no merit and is not reversible error. Where the trial court considers an appellant's history and personal characteristics, including his age, the seriousness of the offense, and had the benefit of sitting through the trial and sentencing to observe Appellant first-hand, the change

---

[21] See *Commonwealth v. Stokes*, 2011 PA Super 261, 38 A.3d 846, 854 (Pa. Super. Ct. 2011) (firearm); *Commonwealth v. A.C.*, 2000 PA Super 361, 763 A.2d 889 (2000) (steak knife); *Commonwealth v. McNeil*, 388 Pa. Super. 108, 120, 564 A.2d 1289, 1295 (1989) (tire iron); *Commonwealth v. Naranjo*, 2012 Pa Super 183, 53 A.3d 66 (2012) (sharpened metal ruler).

21

to review a presentence report, there is no basis to find the sentence unreasonable. *Commonwealth v. Baker*, 2013 PA Super 200, 72 A.3d 652, 664 (Pa. Super. Ct. 2013) (where a septuagenarian with health problems was sentenced to an aggregate term of 15 – 31 years).

For the foregoing reasons, although Appellant was sentenced to the maximum term of imprisonment, the sentence was not excessive, inconsistent with a specific provision of the Sentencing Code, or contrary to the fundamental norms which underlie the sentencing process. It was carefully considered given Appellant's history, allocution, and actions, and therefore does not raise a substantial question.

Appellant is not entitled to relief on this claim.


## IV. Denial of Pre-Trial Motions

Finally, Appellant raises two instances of alleged court error at the pre-trial stage.

### a. Denial of Appellant's Motion to Dismiss Pursuant to Rule 600(G)[22]

The standard of review regarding the denial of a Rule 600 motion is whether the trial court abused its discretion; the review is limited to evidence on the record of the Rule 600 evidentiary hearing and the findings of the trial court. *Commonwealth v. Kearse*, 2005 PA Super 410, 890 A.2d 388, 391-92 (Pa. Super. Ct. 2005). The facts must be viewed in the light most favorable to the prevailing party. *Id.* The purpose behind this rule is twofold: the protection of the defendant's right to a speedy trial as well as the protection of society; Rule 600 was not designed to "insulate the accused from good faith prosecution delayed through no fault of the Commonwealth." *Commonwealth v. Hunt*, 2004 PA Super 358, 858 A.2d 1234, 1239 (Pa. Super. Ct. 2004).

On the date the motion was heard, April 10, 2013, the adopted text of Pa.R.Crim.P. Rule 600(G) read:

---

[22] Rule 600 in its current form was not implemented until July 1, 2013. Appellant's trial took place in April, 2013.

For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated ...

If the court, upon hearing, shall determine that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. If, on any successive listing of the case, the Commonwealth is not prepared to proceed to trial on the date fixed, the court shall determine whether the Commonwealth exercised due diligence in attempting to be prepared to proceed to trial. If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant ...

During the Motion, both parties agreed that the case was eighty-seven (87) days over the amended run date. N. T. 4/10/13 at 6-7. Two defense continuances resulted in a delay of 314 days. N. T. 4/19/13 at 15. The Commonwealth argued that the delays were due to these defense requests and that the Commonwealth had been ready at all listings. N. T. 4/10/13 at 12. Appellant argued that the Commonwealth had not passed necessary discovery, and the incomplete discovery was the cause for such requests. N. T. 4/10/13 at 11; See, Defendant's Petition to Dismiss Pursuant to 600(G). The Quarter Sessions file, which contained no notation regarding any discovery issues, was marked for identification and later entered into evidence. N. T. 4/10/13 at 13. Furthermore, the Commonwealth stated that if the discovery did exist at the time of the defense continuances, it would have been passed, and if it did not the Commonwealth would have proceeded without the medical records and ballistic evidence. N. T. 4/10/13 at 13.

After hearing the arguments of counsel and considering the relevant evidence, this Court found no evidence the Commonwealth had not exercised its due diligence and denied the motion. N. T. 4/10/13 at 19. Therefore, this decision was not in error, and Appellant is not entitled to relief.

b.  Denial of Motion to Suppress Physical Evidence

Appellant argues that the court erred in denying his motion to suppress physical evidence recovered from his home, characterizing the search warrant as lacking "case-related probable cause" that was "at most a fishing expedition." See, Supplemental Statement of Errors, ¶2.

23

On review of the denial of such a motion, an appellate court may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *Commonwealth v. Gatlos*, 2013 PA Super 252 (Pa. Super. Ct. Sept. 10, 2013). An appellate court is bound by the suppression court's findings when supported by the record; reversal may only occur if the legal conclusions drawn from such findings are in error. *Commonwealth v. Foglia*, 979 A.2d 357, 360 (Pa. Super. 2009).

"In determining whether the warrant is supported by probable cause, the magistrate may not consider any evidence outside the four-corners of the affidavit." *Commonwealth v. Ryerson*, 2003 PA Super 49, 817 A.2d 510, 513 (Pa. Super. Ct. 2003) *quoting Commonwealth v. Sharp*, 453 Pa.Super. 349, 683 A.2d 1219, 1223 (1996) (citations omitted). "Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Jones*, 605 Pa. 188, 199, 988 A.2d 649, 655 (2010). A court reviewing an issuing authority's probable cause determination must determine there was a substantial basis that such cause existed. *Id.* The test is that of the totality of circumstances; "the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*

"There is nothing in the jurisprudence of Article I, Section 8 or the Fourth Amendment that permits a court to invalidate a warrant supported by probable cause based on the court's belief that the police simply do not need to seek further evidence of a crime." The Rules of Criminal Procedure state that a search warrant may be used as an investigative tool under the appropriate circumstances, *i. e.* to search and seize contraband, fruits of a crime, or things otherwise criminally possessed; property

24

that has been used as the means of committing a criminal offense; or property that constitutes evidence of the commission of a criminal offense. Pa.R.Crim.P. 201.

The search warrant gave Appellant's address, stated that Appellant had shot the complainant in the chest, a firearm was recovered from his car, and a record check showed that he owned several firearms. N. T. 4/10/13 at 27, 29. Furthermore, at the time of the search warrant application, Appellant was a person ineligible to own firearms due to his prior conviction. N. T. 4/10/13 at 28. Thus, there was probable cause to search Appellant's house based on a reasonable belief that there was a fair probability contraband and/or evidence of a crime would be found, and this court did not err in denying Appellant's motion.

## CONCLUSION

For the foregoing reasons, Appellant is not entitled to relief on any of his claims and the judgment of sentence should be affirmed.

DATE: ___10/23/13___

BY THE COURT:

NINA WRIGHT PADILLA, J.

25